# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

TANGELA R. RUTHERFORD,    )
    )
       **Plaintiff,**    )
    )    **Civil Action No. 3:10-cv-00376**
    **v.**    )    **Judge Nixon / Knowles**
    )
MICHAEL J. ASTRUE,    )
**Commissioner of Social Security**    )
    )
       **Defendant.**    )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I.  INTRODUCTION

Plaintiff filed her applications for SSI and DIB on August 16, 2006 and December 4, 2006, respectively, alleging that she had been disabled since June 1, 2005,[1] due to back surgery and depression.  Docket No. 12, Attachment ("TR"), TR 99-101, 102-104, 124.  Plaintiff's applications were denied both initially (TR 55, 57, 58, 60)[2], and upon reconsideration (TR 62, 64).  Plaintiff subsequently requested (TR 86) and received (TR 25-53) a hearing.  Plaintiff's hearing was conducted on April 14, 2009, by Administrative Law Judge ("ALJ") Donald E. Garrison.  TR 25.  Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and testified.  *Id.*

On June 30, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-24.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity since June 1, 2005, the alleged onset date (20 CFR 404. 1571 *et seq*. and 416.971 *et seq*.).
>
> 3.  The claimant has the following severe impairments: lumbar spondylolisthesis, degenerative disc disease, asthma, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination

---

[1] Plaintiff's Disability Report lists her disability date as "07/01/2005" (TR 124), while Plaintiff's applications and the ALJ's decision each reports the disability date as June 1, 2005 (TR 15).  This discrepancy is not, however, material to the issues before the court.

[2] The record contains two copies of Plaintiff's initial SSI denial (TR 57, 60) and two copies of Plaintiff's initial DIB denial (TR 55, 58).

2

of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for occasional climbing, balancing, stooping, kneeling, crouching and crawling; standing/walking/sitting at will; no exposure to irritating inhalants or temperature extremes; understanding, remembering and carrying out short and simple instructions and make judgments on simple work-related decisions; and occasional contact with the public.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on June 7, 1963 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

3

TR 17-23.

On August 7, 2009, the SSA received Plaintiff's timely-filed request for review of the hearing decision. TR 10-11. On March 11, 2010, the Appeals Council issued a letter declining to review the case (TR 2-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

4

*Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy

5

in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed: (1) to advise Plaintiff of her right to representation; (2) to properly evaluate the credibility of Plaintiff's testimony; (3) to accord appropriate weight to the opinions of Plaintiff's two treating physicians; (4) to properly evaluate all of Plaintiff's medically-determined impairments; (5) to develop a full and fair record; (6) by relying on "unreliable" testimony from the vocational expert; and (7) by determining, without substantial supporting evidence, that Plaintiff had the residual functional capacity to perform substantial gainful activity.  Docket No. 15, pp. 12-28.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative,

remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Advising Plaintiff of Her Right to Representation

Plaintiff argues that the ALJ did not effectively explain or properly advise Plaintiff of her right to representation.  Docket No. 15, p. 12.  Specifically, Plaintiff contends that the ALJ did not comply with the related standards of the Social Security Act, based on the Commissioner's Hearing, Appeals, and Litigation Manual ("HALLEX"), § I-2-6-52 in ensuring that Plaintiff understood, and was capable of making an informed choice about representation.  *Id.* at 12-13. Plaintiff argues that the ALJ had these affirmative duties:

> to explain the issues to be resolved at hearing; the role of a representative in the hearing process; the weighting of evidence in the case; the role of the vocational expert witness and the right to examine said witness; explain the five step sequential evaluation process and the shifting of the burden of proof; and how a

representative is [paid] for services rendered and only paid upon the issuance of a favorable decision.

*Id.* at 13. Plaintiff argues that, "The ALJ failed to explain any of these matters to the plaintiff." *Id.* Plaintiff maintains that, instead, the ALJ only asked her if she had read, understood, and signed the waiver of right to representation. *Id.* Plaintiff further contends in her Reply that the ALJ should be required to follow HALLEX because HALLEX § I-2-6-52 is the only consistent guidance on the issue offered to the ALJs. Docket No. 21, p. 2. Plaintiff contends that the ALJ never made a ruling that Plaintiff was capable of making an informed choice about her representation. Docket No. 15, p. 12. Plaintiff also contends in her Reply that her high school education is not sufficient to for her to understand the procedural demands and processes of Social Security applications, such that the ALJ's alleged failure to effectively explain or properly advise Plaintiff of her right to representation constitutes reversible error. Docket No. 21, p. 3.

Defendant responds that Plaintiff's waiver of right to representation was legally sufficient. Docket No. 20, p. 8-9. Defendant states that, in the Sixth Circuit, no more is required than Plaintiff's acknowledgment of having received notice of the right to representation and having signed a waiver of that right. *Id.* Defendant argues that Plaintiff received the notice and signed the waiver, thereby satisfying the waiver requirements. *Id.* Defendant additionally argues that "HALLEX does not impose judicially enforceable duties on either the ALJ or this [C]ourt." *Id.* at 8, *quoting Lockwood v. Commissioner Social Security Administration*, 616 F.3d 1068, 1072 (9th Cir. 2010). Defendants adds, "Plaintiff, in fact, had the opportunity to be represented at the hearing, but her representative withdrew due to Plaintiff's lack of cooperation." *Id.* at 8-9.

The provision upon which Plaintiff relies is HALLEX § I-2-6-52A, which states as

follows:

The Administrative Law Judge (ALJ) will open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved. In supplemental hearings, the ALJ need only identify the case, state the purpose of the supplemental hearing, and describe the issue(s) to be decided.

Generally, the content and format of the opening statement are within the discretion of the ALJ. However, if the claimant is unrepresented, the ALJ should ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation.

The ALJ is not required to recite specific questions regarding the right to representation or the claimant's capacity to make an informed choice about representation. However, below are examples of questions the ALJ could ask an unrepresented claimant on the record:

• Did you receive the hearing acknowledgment letter and its enclosure(s)?

• If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.

• The ALJ will enter into the record the acknowledgment letter and all enclosure(s) sent to the unrepresented claimant.

• Do you understand the information contained in that letter, specifically concerning representation?

• If not, the ALJ will answer any questions the claimant may have including explaining the claimant's options regarding representation, as outlined in the acknowledgment letter.

• If the claimant is illiterate, the ALJ must ensure that the claimant is aware of his or her options for representation. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in

10

> obtaining representation. See I-2-0-20 C., Unrepresented
> Claimant.

> Once the ALJ has determined that the claimant is capable of
> making an informed choice, he or she will secure on the record the
> claimant's decision concerning representation. If the claimant
> states that he or she does not want representation, the ALJ will
> obtain from the claimant a written waiver of the claimant's right to
> representation, which will be marked as an exhibit. See I-2-6-98,
> Waiver of Representation.

HALLEX § I-2-6-52.

In the Sixth Circuit, the waiver of right to representation in a Social Security hearing is discussed in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 855-56 (1986). In *Duncan*, the ALJ had asked Mr. Duncan if he had received the notice sent by the Commissioner informing him of his right to be represented by an attorney at the hearing, to which Mr. Duncan replied that he had indeed received the notice. *Id.* Mr. Duncan had stated to the ALJ that he wanted to proceed with the hearing, even though he was not represented by counsel. *Id.* Upon these facts, the Sixth Circuit held that Mr. Duncan was aware of his right to counsel and had properly waived his right to representation. *Id.* The *Duncan* Court found that the ALJ had no further duty to discuss Mr. Duncan's right to representation beyond confirming that Mr. Duncan had received the notice and nevertheless wished to proceed without counsel. *Id.*

While Plaintiff in the case at bar argues that the ALJ did not comply with HALLEX § I-2-6-52 in ensuring that Plaintiff understood and was capable of making an informed choice about representation, HALLEX is an internal SSA manual, and does not govern Social Security hearings in the Sixth Circuit. *Duncan*, however, is controlling authority in the Sixth Circuit.

The ALJ in the case at bar engaged in the following exchange with Plaintiff:

11

| | |
|---|---|
| ALJ: | . . . The purpose of the hearing today is to give you the opportunity to present your case to an independent administrative law judge. . . . Now you have the right to be represented by an attorney or a non-attorney representative, do you understand? |
| CLMT: | Yes sir. |
| ALJ: | You're not represented today. Is it your intention to proceed the hearing representing yourself? |
| CLMT: | Yes sir. |
| ALJ: | You've read, you understand and you signed the waiver of right to representation - - |
| CLMT: | Yes sir. |
| ALJ: | - - form, is that right?  You received or had the opportunity to review the exhibit file, do you have any objection to any of the medical records? |
| CLMT: | No sir. |
| ALJ: | I already reviewed them and I'm not aware of any basis for objection, so they're all admitted into evidence. |

TR 27.

Because the ALJ confirmed that Plaintiff had read, understood, and signed the waiver of right to representation, and because the ALJ confirmed that Plaintiff intended to represent herself at the hearing and wanted to proceed, the ALJ complied with *Duncan* and is not required to do more.  Accordingly, Plaintiff's argument that the ALJ failed to properly advise Plaintiff of her right to representation fails.

## 2. Evaluation of the Credibility of Evidence on the Record

Plaintiff argues that the ALJ did not properly assess the credibility of Plaintiff's testimony and statements from her mother. Docket No. 15, p. 25-27. Specifically, Plaintiff claims that the ALJ stated in a conclusory fashion that he considered Plaintiff's allegations and that he based his decision on the relevant criteria set forth is SSR 96-7p, but that he failed to elaborate on the weight he accorded to Plaintiff's statements and the reasons therefor. *Id.* Plaintiff also argues that the ALJ erroneously failed to consider statements submitted by her mother, Betty R. Cain. *Id.*

Defendant responds that the ALJ followed the required two-step process for evaluating subjective symptoms when he found first, that Plaintiff had a medically determinable impairment that could reasonably be expected to produce her symptoms, and second, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's ultimate RFC finding. Docket No. 20, p. 16-17, *citing* TR 19. Defendant argues that the ALJ's decision was properly supported by substantial evidence. *Id.*

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other

13

evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf. King v. Heckler*,

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir.

1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly

state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the

reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ in the case at bar, in his decision, specifically stated:

> After careful consideration of the evidence, the undersigned finds that
> the claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects
> of these symptoms are not credible to the extent they are inconsistent
> with the above residual functional capacity assessment.

TR 19.

In making this determination, the ALJ discussed the medical and testimonial evidence as

follows:

> The claimant alleges disability due to lumbar spondylolisthesis,
> degenerative disc disease, asthma, and depression.  A February
> 2004 MRI showed degenerative disc disease at L4-5.  The claimant
> received a round of left SI joint steroid injections in February,
> March, April, May and June 2005 with little relief of her
> symptoms.  She underwent a lumbar discectomy, decompression
> and fusion in September 2005 with post-operative records showing
> good results.  Ex. 5F.

> A Physical Residual Functional Capacity Assessment was
> completed by DDS Dr. W. Downey in January 2006.  He found
> limitations consistent with a medium range of work based on the
> successful surgery.  Ex. 4F.

> The claimant reported persistent pain despite surgery.  A February
> 2006 x-ray and April 2006 MRI showed new surgical changes of
> anterior fusion of L4 with mild facet arthrosis at L3-L4 and
> moderate arthrosis at L5-S1, but no reasonable pathology for the
> claimant's complaints of pain.  There was no evidence of disc

14

herniation, central or peripheral stenosis.  It was also noted that she ambulated with erect posture, steady gait, and had a negative straight leg raise bilaterally.  There were no focal motor or sensory deficits noted, deep tendon reflexes were 2+ and symmetric in the lower extremities.  Ex. 5F, p. 11.  The claimant received nerve blocks in June, July and August 2006.  Ex. 5F.

In January and February 2007, new lumbar x-ray and MRIs again showed no disc herniation or significant central or foraminal spinal stenosis noted.  Ex. 19F.  A June 2007 hip x-ray showed no abnormalities and lumbar x-ray showed post-surgical changes with no abnormalities.  Ex. 22F.

TR 19.

The ALJ continued:

The claimant also alleges disability due to asthma with nighttime wheezing and cough.  August 2006 pulmonary function tests confirmed mile to moderate asthma.  The claimant's asthma is treated and well-controlled with a prescribed bronchodilator inhaler.  It was noted that smoking exacerbated this condition and that the claimant continued to smoke despite her physicians' recommendations to stop.  In January and February 2009, a chest x-ray showed no acute pathology for the claimant's shortness of breath.  Nonetheless, based on the claimant's history of asthma, I find that a restriction form [*sic*] exposure to irritating inhalants and temperature extremes is appropriate.

. . .

. . . During her [March 2009] examination, the claimant admitted that her asthma attacks are mild and usually respond immediately to medication.  Ex. 23F.

TR 19-20.

With regard to Plaintiff's mental impairments, the ALJ stated:

The claimant also alleges disability due to depression.  In January 2007, the claimant was hospitalized for homicidal ideations toward her husband when she discovered his infidelity.  Ex. 18F, p. 8.  On follow-up in March 2007, she was much improved and presented "cheerful and euthymic".  Mental status examination showed no

15

abnormalities.  It was noted that the claimant admitted current cocaine abuse during this visit.  Ex. 18F, p. 3.

Other than the inpatient hospitalization in January 2007, the claimant's mental health treatment has been rather sporadic.  Most mental status examinations show only mild deficits including depressed mood and her Global Assessment of Functioning (GAF) scores were mostly with in [*sic*] the 60 to 65 range indicating only mild to moderate difficulty in social and or [*sic*] occupational functioning per the <u>DSM-IV-TR</u> (2000 text revision).  Ex. 18F.

In October 2006, a consultative examination was performed by DDS psychologist K. Sherrod, Ph.D.  Ex. 8F.  The claimant reported being diagnosed with depression and bipolar disorder.  Dr. Sherrod noted that she exhibited symptoms of depression during the evaluation, but that the claimant herself said that she did not know why she was diagnosed with bipolar disorder.  The claimant also offered inconsistent statements regarding past drug use, alleging that she stopped abusing substances in 1998; however, the treatment notes show that she was hospitalized for substance induced suicidal attempt in 2003. . . .

TR 20-21.

The ALJ also noted Plaintiff's "admitted daily activities including caring for [her] own general daily needs without assistance, cooking, attending church and [performing] light household chores."  TR 22.

After considering the medical and testimonial evidence, along with Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work "except for occasional climbing, balancing, stooping, kneeling, crouching and crawling; standing/walking/sitting at will; no exposure to irritating inhalants or temperature extremes; understanding, remembering, and carrying out short and simple instructions and make judgments on simple work-related decisions; and occasional contact with the public."  TR 18, 22.

16

In making this determination, the ALJ accepted the complaints and opinions he found to be credible (*i.e.* consistent with, and supported by, the evidence of record). While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the above residual functional capacity assessment. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

Regarding Plaintiff's contention that the ALJ committed reversible error when he failed to consider her mother's statements in the third-party Function Report (TR 133-140), as discussed above, the ALJ based his determination on opinions that were consistent with, and supported by, the evidence of record. The ALJ explicitly indicated that he relied upon medical reports from Drs. Davis and Pennington (TR 20), whose findings contradict the mother's statements in her Function Report (*see* TR 138-39, 311-313, 433-440). In the Sixth Circuit, failure to discuss the testimony of a claimant's husband was not reversible error where it was clear that the entire record had been considered and the testimony of the claimant's husband had implicitly been rejected. *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988). Accordingly, the ALJ's failure to discuss the statements from Plaintiff's mother does not constitute reversible error. Plaintiff's argument fails.


### 3. Weight Accorded to Opinion of Plaintiff's Treating Physicians

17

Plaintiff maintains that the ALJ improperly accorded greater weight to the findings of Dr. Davis than to treating physicians Drs. Jeffrey K. Moore and James Ladson. Docket No. 15, p. 19. Specifically, Plaintiff argues that the ALJ "mischaracterized the assessments made by both Dr. Moore and Dr. Ladson and the assertion that neither assessment was supported by the physicians' treatment notes is simply not correct." *Id.* Plaintiff also argues that, although the ALJ states that the treatment records of Drs. Moore and Ladson do not support their conclusions, "the ALJ never makes any reference to treatment notes that conflict with the assessments because no such conflicts exists [*sic*]." *Id.* Plaintiff further contends that the ALJ's assertion that the conclusions of Drs. Moore and Ladson were conclusory is also "not accurate," because both Dr. Moore and Dr. Ladson actually provided a history of Plaintiff's medical conditions along with their medical opinions regarding treatment, prognosis, and work ability. *Id.* at 19-21. Plaintiff argues that the opinions of Drs. Moore and Ladson were based on the evidence, and not on her subjective complaints, as asserted by the ALJ. *Id.* at 21. Plaintiff contends that as treating physicians whose opinions are supported by their treatment records, the opinions of Drs. Moore and Ladson should have been accorded controlling weight. *Id.* at 22.

Defendant responds that the ALJ's decision to accord greater weight to Dr. Davis' opinion was warranted because the opinions of Drs. Moore and Ladson were not consistent with their treatment notes. Docket No. 20, p. 13-14. Defendant argues that Plaintiff does not reference any specific treatment notes from Dr. Moore that support a finding of total disability for Plaintiff. *Id.* at 14. With regard to the inconsistencies of Dr. Ladson's opinion, Defendant argues that the ALJ noted that, while Dr. Ladson had limited Plaintiff to less than the full range of sedentary work (*Id.* at 13), he had noted in his treatment notes that over several visits, Plaintiff

18

had reported that her pain, when on medication, was either mild or moderate, usually with limited side effects (*Id.* at 14). Defendant contends, "Plaintiff has presented no credible argument as to why someone experiencing mild to moderate pain, on medication, could not perform a reduced range of light work, consistent with Dr. Davis' opinion and with the ALJ's RFC finding." *Id.* Defendant argues that the ALJ properly evaluated the medical evidence. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

19

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, with respect to the opinions of treating physicians Drs. Moore and Ladson, the ALJ stated as follows:

I give no weight to the opinions of Dr. Moore and Dr. Ladson.  Dr. Moore's [sic] made a conclusory statement of disability that was unsupported by his own treatment notes.  Dr. Ladson provided specific limitations, but his findings were not supported by his treatment notes or any objective medical evidence of record.  Dr. Ladson also noted in his medical source statement that he had relied on the claimant subjective complaints.

TR 20.

As an initial matter, it does not appear that Dr. Moore's treatment notes are part of the record.  The only document in the record signed by Dr. Moore is a letter addressed "To whom it may concern," dated April 13, 2009.  TR 485.  That letter states in its entirety as follows:

20

Monday, April 13, 2009

To whom it may concern.

My patient Tangela Rutherford suffers from a number of medical conditions including asthma, anxiety, psoriasis, headaches, Morton's Neuroma, radculopathy, and arthritis. She has no insurance and needs medical attention including surgery to enable her to walk and function without daily foot pain. It is my professional medical opinion that in her current state she is unable to maintain employment.

Sincerely
Dr. Jeffrey K Moore MD

PS please contact me if you need anything further.

TR 485.

As can be seen, the ALJ is correct that Dr. Moore's statement is conclusory; it simply lists Plaintiff's ailments, notes that she needs further medical care but has no insurance, and concludes that she is unable to work. Dr. Moore's statement cites no objective evidence as support for his determinations. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). Because Dr. Moore's opinion was conclusory and unsupported by objective medical evidence, the ALJ was not bound to accord it controlling weight. Plaintiff's argument fails.

On November 9, 2006, Dr. Ladson complete a Medical Assessment of Ability to do Work-Related Activities (Physical) form regarding Plaintiff. TR 394-396. In that assessment, Dr. Ladson opined that Plaintiff could occasionally and frequently lift and/or carry less than 10 pounds, stand and/or walk for about 2 hours in an 8-hour workday, and sit for about 2-4 hours in

21

an 8-hour workday. TR 394-395. As support for his opinion regarding Plaintiff's ability to lift and/or carry, Dr. Ladson noted:

> Increased low back pain with lumbar extension.
> Muscle spasm in lumbar paravertebral muscles.
> Tenderness to palpation over sacroiliac joints.
> Positive Patrick's test.

TR 394. As support for his opinion regarding Plaintiff's ability to stand and/or walk, Dr. Ladson noted:

> The patients [*sic*] states she can only do house work for 30 minutes before she has to stop and rest. Her rest period is 1-2 hours.

*Id.* Dr. Ladson did not write anything in the area provided for him to note the medical findings that support his opinion regarding Plaintiff's ability to sit. *See* TR 395. Dr. Ladson also opined that Plaintiff could never stoop or crouch; that she required a job that would allow her a sit/stand option at will and would allow her to take unscheduled rest periods for pain control; that she could not sustain full-time work activity; and that she would miss 14-20 days of work per month. *Id.*

Dr. Ladson was one of several physicians who treated Plaintiff at the Pain Management Group between January 26, 2006 and September 29, 2006. *See* TR 272-310. Treatment notes from the Pain Management Group generally indicated that Plaintiff's pain was mild to moderate when she took her medication, and that Plaintiff was able to take her medication without significant side effects. *Id.*

Additionally, the ALJ discussed the objective evidence of record, including:

> The claimant reported persistent pain despite surgery. A February 2006 x-ray and April 2006 MRI showed new surgical changes of anterior fusion of L4 with mild facet arthrosis at L3-L4 and moderate arthrosis at L5-S1, but no reasonable pathology for the

22

claimant's complaints of pain. There was no evidence of disc
herniation, central or peripheral stenosis. It was also noted that she
ambulated with erect posture, steady gait, and had a negative
straight leg raise bilaterally. There were no focal motor or sensory
deficits noted, deep tendon reflexes were 2+ and symmetric in the
lower extremities. Ex. 5F, p. 11. The claimant received nerve
blocks in June, July, and August 2006. Ex. 5F.

In January and February 2007, new lumbar x-ray and MRIs again
showed no disc herniation or significant central or foraminal spinal
stenosis noted. Ex. 19F. A June 2007 hip x-ray showed no
abnormalities and lumbar x-ray showed post-surgical changes with
no abnormalities. Ex. 22F.

TR 19.

The ALJ also discussed, *inter alia*, that, upon "a thorough physical examination" by Dr.

Bruce A. Davis, Dr. Davis opined that Plaintiff could lift/carry 10 to 20 pounds occasionally and

10 pounds frequently; stand/walk 4-6 hours total in an 8-hour workday, with less than 1 hour

uninterrupted; and sit 8 hours in an 8-hour workday. TR 20, *citing* TR 311-313. Dr. Davis also

opined that Plaintiff was limited in her bending and squatting, climbing/heights, and exposure to

irritating inhalants. *Id.* After reviewing the record in its entirety, the ALJ ultimately accorded

greater weight to the opinion of Dr. Davis. TR 20.

Dr. Ladson was one of Plaintiff's treating physicians, a fact that would justify the ALJ's

giving greater weight to his opinion than to other opinions as long as his opinion was consistent

with, and supported by, the objective evidence of record. As has been noted however, Dr.

Ladson indicated in his assessment discussed above, that his opinion regarding Plaintiff's

standing and/or walking ability was based on Plaintiff's self-reporting and subjective complaints.

As has also been discussed, the ALJ properly determined that Plaintiff's subjective complaints

were not credible to the extent alleged. Despite being asked to do so, Dr. Ladson did not

23

indicate any grounds for his opinion regarding Plaintiff's limited ability to sit. Moreover, as has been demonstrated Dr. Ladson's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above (*Id.*), and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner (20 C.F.R. § 416.927(e)(2)). As such, the Regulations do not mandate that the ALJ accord the evaluations of Dr. Ladson controlling weight. Accordingly, Plaintiff's argument fails.

**4. Evaluation of All of Plaintiff's Medically-Determined Impairments**

Plaintiff argues that the ALJ failed to follow the requirements of SSR 85-28 because he neither provided an analysis of Plaintiff's physical impairments, nor considered all of Plaintiff's physical impairments and their impact, either individually or in combination, on Plaintiff's ability to engage in substantial gainful activity. Docket No. 15, p. 16. Specifically, Plaintiff argues that the ALJ failed to give proper weight to her anxiety disorder, exertional chest pain with anterior ischemia, extreme obesity, psoriasis, headaches, arthritis, and Morton's Neuroma. *Id.* at 17. Plaintiff argues that "the ALJ may not ignore evidence inconsistent with his opinion without explanation." *Id.* Plaintiff contends that many of these impairments, in combination, may have a disabling effect on Plaintiff and that their explicit analysis is necessary. *Id.* at 16. Plaintiff maintains that the ALJ's lack of consideration of these impairments, especially Plaintiff's obesity, constitutes "a fatal error" that necessitates reversal and/or remand. *Id.* at 18.

24

Defendant responds that the ALJ acknowledged and considered Plaintiff's allegations and the evidence pertaining to those allegations. Docket No. 20, p. 9-13. Regarding the ailments Plaintiff cites as being "ignored" by the ALJ, Defendant argues that Plaintiff only mentions a number of these impairments once or twice in the record. *Id.* at 9. Defendant claims that Plaintiff has alleged that far fewer impairments contributed to her claimed disability, and that the ALJ properly considered the impairments appropriately alleged as sources of disability. *Id.* at 9-10. Defendant argues that the ALJ acknowledged Plaintiff's severe lumber spondylolisthesis and depression (*Id.* at 10), and was not required to specifically address Plaintiff's leg pain and obesity (*Id.* at 12). Defendant argues that Plaintiff's leg pain factored into the overall decision, despite its not having been explicitly discussed, when the Appeals Council modified the ALJ's finding that Plaintiff could stand, walk, or sit at will by removing this ability. *Id.* at 10-11. Defendant also argues that Plaintiff's leg pain necessarily factored into the ALJ's finding that Plaintiff had severe disc disease and lumbar spondylolisthesis, because leg pain in a common symptom of both conditions. *Id.* Regarding Plaintiff's obesity, Defendant contends that her obesity is apparent from the record, and that ALJ relied on medical reports that incorporated her obesity, and nevertheless found her not to be disabled. *Id.* at 12-13. Defendant also argues that there is no specific degree of obesity that creates a severe impairment requiring any particular procedure for an ALJ to address a plaintiff's obesity, but rather, that an ALJ should perform an individualized assessment of the impact of obesity on an individual's functioning. *Id.* at 11-12. Thus, Defendant asserts that the ALJ's decision should be upheld.

After evaluating all of the medical, vocational, and testimonial evidence, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or

equaled a listing. TR 18-23. As noted, Plaintiff alleges that the ALJ failed to consider her anxiety disorder, exertional chest pain with anterior ischemia, extreme obesity, psoriasis, headaches, arthritis, and Morton's Neuroma. Docket No. 15, p. 17. Significantly, however, Plaintiff, in the Disability Report filed in conjunction with her application for disability, alleged disability due to "back surgery and depression." TR 124. Construing "back surgery and depression" liberally, as Plaintiff was *pro se* at her hearing (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), the undersigned broadly interprets Plaintiff's allegation of disability due to "back surgery and depression" to encompass back problems that could radiate down her legs and into her feet and mental health issues. Even if the Court generously construes Plaintiff's allegations of disability, however, Plaintiff never alleged, either in her application for disability or at her hearing, that she was disabled on account of chest pain with anterior ischemia, extreme obesity, and/or arthritis. *See* TR 124-131, 27-53. The Sixth Circuit has held that when a plaintiff does not raise an issue before the Commissioner at the administrative level, the Plaintiff is not entitled to remand on that issue. *See Ferrari v. Commissioner of Social Sec.*, 1996 WL 549782, 1 Ohio (6th Cir. 1996) (citing *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 n.2 (6th Cir. 1998) (per curium)). Because Plaintiff did not raise disability due to chest pain with anterior ischemia and/or arthritis, she is not entitled to remand because of those ailments.[4]

With regard to her anxiety, although Plaintiff contends that the ALJ did not discuss her anxiety, the ALJ considered Plaintiff's mental health ailments. Specifically, the ALJ engaged in the following exchange with Plaintiff at her hearing:

---

[4]As will be discussed in greater detail below, because Plaintiff is clearly obese, she does not have to specifically allege disability based upon her obesity in order for the ALJ to consider it.

Q       Do you experience any depression or anxiety?

A       Yes.

Q       How does it interfere with your ability to function?

A       My depression have in a, have me where I just stay in my room, won't come out.

Q       Do you take medication for it?

A       No. I used to.

Q       Dr. Moore doesn't prescribe anything for it?

A       No.

Q       Now you used to go to Vanderbilt Community Mental Health?

A       Right. I can't, don't have any insurance, I can't go anywhere without insurance.

Q       Did you take medication then?

A       Yes.

Q       Did it help then?

A       Yes.

Q       Now you've been hospitalized for mental health issues, is that right?

A       Yes.

Q       A couple of times back in 2003 and then again in early 2007?

A       Yes.

Q       You haven't been hospitalized since then?

A       No.

27

TR 40-41. In addition to engaging the in the above exchange, the ALJ, in his decision, discussed Plaintiff's mental health treatment and depression. TR 20-22. Accordingly, the ALJ properly considered Plaintiff's anxiety.

Regarding Plaintiff's assertion that the ALJ failed to consider her Morton's Neuroma, the ALJ engaged in the following exchange with Plaintiff at her hearing:

> Q  He makes mention of Morton's neuroma, is it on your foot or feet?
>
> A  Yes, it's on my foot, my toes.
>
> Q  Does it cause you any limitations?
>
> A  Yes.
>
> Q  What?
>
> A  I mean my foot starting aching and it'll swell up and it get real numb and my toes is going to, it's my, it's my right foot and my toes is going to the right.

TR 40. In his decision, the ALJ also discussed the effects of her "Morton's Neuroma" when he noted her radicular foot pain (TR 20), which Plaintiff indicated in her hearing was part of her Morton's Neuroma (TR 40). Accordingly, the ALJ considered Plaintiff's "Morton's Neuroma."

To the extent that Plaintiff argues that the ALJ's failure to use the exact terms "anxiety disorder" and "Morton's Neuroma" constitutes reversible error, this argument fails as the ALJ's decision demonstrates that he considered these impairments. *Id.*

Concerning Plaintiff's argument that the ALJ failed to consider her headaches, Plaintiff testified that her headaches occurred when she had coughing fits due to her asthma, and lasted until she was able to take her asthma medication. TR 39-40. The ALJ discussed Plaintiff's asthma, and ultimately included in his RFC determination that, because of Plaintiff's asthma, a

restriction from exposure to irritating inhalants and temperature extremes was appropriate. TR 19-20. Because Plaintiff testified that her headaches occurred when she had coughing fits due to her asthma, and because the ALJ discussed her asthma, the ALJ appropriately considered Plaintiff's headaches.

With regard to Plaintiff's argument that the ALJ failed to consider her psoriasis, the ALJ engaged in the following exchange with Plaintiff:

> Q    He makes reference to psoriasis in his letter, do you
>      experience psoriasis?
>
> A    Yes.
>
> Q    Does it cause you any limitations?
>
> A    Yes.
>
> Q    What?
>
> A    Sometimes I can't walk.

TR 39. Accordingly, the ALJ considered Plaintiff's psoriasis.

Concerning Plaintiff's obesity, the ALJ was aware of Plaintiff's obesity because he saw her at her hearing, and because the record is replete with instances of treatment notes indicating Plaintiff's height/weight and indicating that she is obese. The Sixth Circuit requires an ALJ to consider a claimant's obesity either expressly or indirectly where the record includes evidence of the claimant's obesity and a resultant effect on the claimant's impairments. *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. 2006). In *Bledsoe*, the claimant's expert reports referred to the claimant as extremely and morbidly obese. *Id.* The Sixth Circuit held that the ALJ had sufficiently considered obesity by referencing the expert reports, which had noted the claimant's obesity. *Id.* at 411-12 ("The ALJ does not need to make specific mention of obesity if

29

he credits an expert's report that considers obesity.").

Like the ALJ in *Bledsoe*, the ALJ in the case at bar relied on an expert opinion that expressly considered Plaintiff's obesity. Specifically, the ALJ relied on the opinion of Dr. Davis, who explicitly diagnosed Plaintiff with "Class 3 Extreme Obesity." TR 313. Despite diagnosing Plaintiff with "Class 3 Extreme Obesity," Dr. Davis ultimately concluded that Plaintiff retained the residual functional capacity to lift/carry 10-20 pounds occasionally and 10 pounds frequently; stand/walk for 4-6 hours (with less than 1 hour uninterrupted); and sit for 8 hours. *Id.* Dr. Davis additionally restricted Plaintiff to limited bending, squatting, climbing/heights, and exposure to irritating inhalants. *Id.* Because Dr. Davis considered Plaintiff's obesity in his RFC determination, and because the ALJ relied upon the opinion of Dr. Davis in reaching his ultimate RFC determination, pursuant to *Bledsoe*, the ALJ properly considered Plaintiff's obesity.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. As has been demonstrated through the discussion above, the ALJ properly considered the medical and testimonial evidence of record and reached a reasoned decision. The ALJ's decision was supported by substantial evidence; the ALJ's decision, therefore, must stand.

**5. ALJ's Development of the Record**

Plaintiff contends that the ALJ did not fulfill his duty to develop a full and fair record because Plaintiff was *pro se* at the hearing and the ALJ did not sufficiently question Plaintiff about all of her potential conditions and claims. Docket No. 15, p. 14-15. Plaintiff argues that the ALJ should have questioned her more extensively about her physical and mental capabilities.

30

*Id.* Specifically, Plaintiff contends that the ALJ should have asked her about how much weight she could lift on a frequent and occasional basis; how long she could sit, stand, or walk; whether she had difficulty with fine or gross motor skills; whether she could kneel, squat, or balance; how environmental exposures impacted her ability to perform tasks; how her anxiety and depression affect her ability to engage in work-type activities; how she could deal with the general public; how she could interact with supervisors and/or co-workers; how she could sustain concentration, persistence, and pace; and how she could recall work instructions. *Id.* Plaintiff maintains that these questions were "basic" and that the ALJ had a "special heightened duty" to develop the record in the hearing because Plaintiff was unrepresented. *Id.*, *quoting Nabours v. Comm'r of Soc. Sec.*, 50 Fed. Appx. 272, 2002 (6th Cir. 2002). Plaintiff argues that because the ALJ failed to prompt Plaintiff to explain her impairments more extensively at the hearing, the ALJ's decision is not based on a full and fair record and should be reversed and/or remanded.

While Defendant does not respond directly to this argument, Defendant generally contends that the ALJ appropriately evaluated the medical and testimonial evidence of record and reached a reasoned decision that was well-supported by substantial evidence. Docket No. 20.

Plaintiff correctly asserts that the ALJ must fully and fairly develop the record and has a heightened duty to do so with a *pro se* plaintiff. The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. *Johnson v. Secretary*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the

ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998); *Hurst*, 753 F.2d at 519), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (1991)).  Additionally, when the plaintiff is *pro se*, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Lashley v. Sec. of Health & Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983), *quoting Gold v. Sec. of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2nd Cir. 1972).

The ALJ in the case at bar thoroughly questioned Plaintiff, asking about, *inter alia*, her education, work history, and reasons for leaving each position (TR 29-35); her medications, their side effects, and her medical treatment (TR 34-39); her pain and symptoms she was experiencing (TR 37-44); and her daily activities (TR 45-56).  Moreover, the ALJ specifically asked her about conditions noted in the medical records that she had not mentioned, including her headaches and psoriasis.  As can be seen in the discussions of the previous statements of error, the ALJ appropriately questioned Plaintiff, developed a full and fair record, and reached a reasoned decision.

The Findings of Fact and Conclusions of Law section of the ALJ's decision specifically addresses in great detail not only Plaintiff's testimony and her subjective claims, but also the medical evidence, clearly indicating that these factors were considered.  TR 17-23.  The ALJ reviewed, evaluated, and cited medical opinions from Drs. W. Downey, Bhaskar Mukherji, Bruce Davis, James Ladson, Frank Pennington, Jeffrey Moore, Kathryn Sherrod, Jeffrey Bryant, William Regan, and Lynn Tuggle. TR 19-22.  It is clear from the ALJ's detailed articulated

rationale that, although there is evidence which could support the Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with the Plaintiff's allegations. This is within the ALJ's province.

Because the ALJ developed the evidence and adequately explained the reasons and basis for his conclusions, and because the ALJ's findings are supported by "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion" such that "substantial evidence" exists, the decision of the ALJ must stand.

**6. Reliance on Testimony from the Vocational Expert**

Plaintiff argues that the ALJ erred in relying on testimony from the vocational expert ["VE"], Dr. Kenneth Anchor, because his testimony was "not consistent with the Dictionary of Occupational Titles ["DOT"]" and was "overall unreliable." Docket No. 15, p. 23-25. Plaintiff asserts that the VE identified five jobs that Plaintiff could perform, but mischaracterized one of the potential jobs as an unskilled job. *Id.* at 23-24. Plaintiff additionally contends that the remaining jobs identified as appropriate for her were not appropriate because the VE was specifically asked to identify jobs that would include a sit/stand at will option, but the jobs he identified as available and consistent with the DOT were not, "as the DOT does not identify or classify any job with a sit/stand at will option." *Id.* Plaintiff argues that the ALJ had the duty to resolve any apparent conflicts between the jobs identified by the VE and the DOT's classifications, but that the ALJ failed to do so. *Id.*, quoting *Allshouse v. Comm'r of Soc. Sec.*, 2008 WL 4372646 at (E.D. Mich. 2008). With regard to the job mischaracterization, Plaintiff contends that, although the VE identified as available the job of a "Pricing Clerk" (which is sedentary and unskilled), the VE provided the DOT Code Number for "Court Clerk" (not

"Pricing Clerk"). *Id.* Plaintiff contends that this constitutes reversible error because "Court Clerk" is a highly skilled position which Plaintiff could not perform. *Id.*

Defendant responds that Plaintiff's argument is without merit because the VE merely inadvertently cited the wrong DOT number for the job of Pricing Clerk. Docket No. 20, p. 15. Defendant argues that the inadvertent numeric reference to Court Clerk was not only accidental, but also harmless, because even if the number of available Pricing Clerk or Court Clerk jobs were omitted from the positions identified as available and appropriate by the VE, approximately 8,500 appropriate jobs would remain available to Plaintiff. *Id.*

With regard to Plaintiff's argument that the DOT does not address sit/stand options, Defendant concedes that Plaintiff is correct in that fact, but argues that a VE regularly provides this sort of information based on their training and experience. *Id.* at 15-16. Defendant contends that "[i]n no way does such filling in of the gaps render the VE's testimony inconsistent with the DOT." *Id.*

With regard to Plaintiff's contention that the VE's citation of the numeric code for "Court Clerk" while identifying the position of "Pricing Clerk" rendered his testimony unreliable, the citation of the wrong numeric code appears to be a simple misstatement and is harmless error, as the VE specifically stated that the position of "Pricing Clerk" was appropriate for a hypothetical claimant; the requirements of the position of "Pricing Clerk" are consistent with the impairments specified by the ALJ in the hypothetical; and the ALJ, in his decision explicitly referenced the position of "Pricing Clerk." There is nothing in the record to indicate that either the VE or the ALJ thought that the position of "Court Clerk" would be either appropriate for, or available to, Plaintiff. Moreover, even removing the 900 Pricing Clerk positions from the positions identified

34

by the VE as being appropriate for, and available to, Plaintiff, the VE identified approximately 8,500 other positions for Plaintiff. Accordingly, the VE identified a significant number of available positions for Plaintiff such that the inclusion of the 900 Pricing Clerk positions is of no import. Plaintiff's argument on this point fails.

Plaintiff's argument that, because a VE testifies in accordance with the DOT (which admittedly does not include a sit/stand at will option in its job descriptions), the VE's testimony is unreliable when the ALJ proffers a hypothetical question that includes a sit/stand at will option, is flawed. The VE is called to testify based on his familiarity with job requirements and working conditions. The VE, when testifying regarding the exertional demands of a position and/or the appropriateness of a position for a particular claimant, may testify using his own knowledge and expertise. *See* 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge..."). The VE must identify jobs that would be appropriate for a hypothetical claimant considering *all* of the impairments the ALJ lists in the hypothetical question (including a sit/stand at will option). Despite Plaintiff's argument to the contrary, there is no inconsistency in the VE's testimony. The VE considered all of the impairments listed in the ALJ's hypothetical question, and identified appropriate jobs for that hypothetical claimant, based upon the DOT, his experience, his knowledge, and his expertise. The VE's testimony was proper. Plaintiff's argument on this point likewise fails.


**7. Ability to Perform Substantial Gainful Activity**

Plaintiff maintains that, "[t]he evidence establishes that the Plaintiff cannot engage in substantial gainful activity and has not been able to engage in any work activity from and after

her onset of disability date." Docket No. 15, p. 28. As support for her argument, Plaintiff contends that the ALJ should have accorded "at least significant weight" to the opinions of Plaintiff's treating physicians because those opinions "were supported by the weight of the evidence" and "indicate complete and full disability." *Id.*

Defendant responds that Plaintiff's argument merely re-states her treating physician argument, discussed above, and that the ALJ's decision was supported by substantial evidence and should be affirmed. *Id.*

As analyzed above, the ALJ accorded appropriate weight to the opinions of Plaintiff's treating physicians. Additionally, as has been demonstrated through the analyses of the statements of error above, the ALJ properly considered the medical and testimonial evidence in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating the record in its entirety, determined that Plaintiff retained the Residual Functional Capacity to perform the full range of light work. TR 23. The ALJ properly evaluated the evidence in reaching his determination, and the Regulations do not require more.

Moreover, as has been demonstrated above, the ALJ's determination was supported by substantial evidence. The reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

36

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

37